# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0395, <u>State of New Hampshire v. Jason W. Nason</u>, the court on April 28, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. See <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Jason W. Nason, appeals his convictions, following a jury trial, of manslaughter, second-degree assault, negligent homicide, aggravated driving while intoxicated, and driving under the influence. See RSA 265-A:2, I(a), :3, I(b) (2016) (driving under the influence and aggravated driving under the influence); RSA 630:2, I(b), :3, II (2016) (manslaughter and negligent homicide); RSA 631:2, I(b) (2016) (second-degree assault). He argues that the Superior Court (<u>Ignatius</u>, J.) erred in: (1) denying his motion to dismiss; and (2) denying his motion to preclude a witness's testimony.

The defendant first argues that the trial court erred in denying his motion to dismiss the charges because the evidence was insufficient to prove impairment. To prevail upon a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. <u>State v. Morrill</u>, 169 N.H. 709, 718 (2017).

The record shows that on September 13, 2016, at approximately 4:00 p.m., the defendant was driving his pickup truck northbound on Route 16 when his truck crossed the double yellow centerline and entered the southbound lane of travel. The vehicle traveling in the southbound lane veered into the breakdown lane in an effort to evade the defendant's truck. The defendant's truck entered the southbound breakdown lane and collided with the southbound vehicle, killing the driver and causing serious bodily injury to the passenger.

The weather on that day was warm and dry, with clear skies and at least ten miles of visibility. There were no skid marks or other indications that the defendant attempted to stop his truck or avoid the crash. The trooper leading the investigation found no mechanical defects that would have caused the truck to veer into the opposite lane. Records show that the defendant was not using his cellphone at the time of the crash. The defendant admitted to another trooper that he had driven across the centerline and struck the other

vehicle, but he could not explain how he lost control over his truck. The defendant also admitted that he is a drug user but claimed that he had not used drugs that day. The trooper drove the defendant to the hospital, where he consented to a blood test.

The defendant's blood was tested at the State Police Forensic Laboratory, which showed that, three to four hours after the accident, his blood contained 8.1 nanograms per milliliter of fentanyl and between five and ten nanograms per milliliter of clonazepam. A toxicologist who testified at trial described this as "a very substantial amount" of fentanyl, noting that "people have been known to die at levels far less; three nanogram[s] per milliliter." She opined that the defendant had exhibited signs and symptoms of impairment by fentanyl and clonazepam at the time of the accident.

The defendant argues that the evidence was insufficient to prove impairment. He asserts that there is no per se limit for the amount of drugs that a person can have in his system while driving, that "[n]o witnesses saw any signs of impairment," and that there was no direct evidence of impairment. When the evidence as to an element of proof is solely circumstantial, it must exclude all reasonable conclusions except guilt. See Morrill, 169 N.H. at 718. The record shows that witnesses, including the driver and passenger in a vehicle traveling behind the victims' vehicle, observed the defendant's truck cross the centerline and collide with the victims' vehicle. The trooper who drove the defendant to the hospital after the accident described him as being "lethargic at times," a symptom of drug use, according to the toxicologist. This evidence, together with the laboratory results showing that the defendant's blood contained clonazepam and an elevated level of fentanyl, is direct evidence of impairment. See State v. Kelley, 159 N.H. 449, 454 (2009). Even assuming, without deciding, that the evidence of impairment is entirely circumstantial, we conclude that the defendant's alternative hypothesis—that he ingested drugs only after the accident and before the police arrived—is not reasonable given his claim that he had not used drugs that day. See Morrill, 169 N.H. at 718.

The defendant also argues that the evidence of impairment was insufficient because the State's toxicologist had no opinion as to whether he was "in the acute or withdrawal phase of fentanyl or clonazepam." As a result, he argues, there was insufficient evidence to show that "the drugs were actively affecting him at the time of the accident." The toxicologist opined that the defendant demonstrated signs and symptoms of impairment consistent with the use of fentanyl and clonazepam. She opined that mixing fentanyl, an opioid, with clonazepam, a benzodiazepine, "is a really dangerous combination." She testified that the combination of the two drugs could cause a person to experience lethargy, to be inattentive, and to demonstrate poor driving skills, including weaving within a lane of travel and going outside the lane of travel. The toxicologist opined that, in this case, the defendant's loss of

control over his truck was evidence of impairment. The toxicologist found other indicators of impairment as well, including the defendant's lack of memory of the accident and his headache after the accident.

Although, on cross-examination, the toxicologist testified that she had no opinion as to whether the defendant was "in the acute or withdrawal phase" of fentanyl use, she also testified that a person "can be impaired during the withdrawal phase." Moreover, she testified that a person can "avoid going into withdrawal" by continuing to use the drug, and that, in this case, it was unlikely that the fentanyl had been in the defendant's system for more than 24 hours. Based upon this evidence, we conclude that the defendant's hypothesis that he was unimpaired by the drugs in his system at the time of the accident is not reasonable. See Morrill, 169 N.H. at 718. We conclude that the evidence was sufficient to prove impairment.

The defendant next argues that the trial court erred in denying his motion to preclude a witness from testifying, arguing that the witness's testimony was not relevant and that, even if it was relevant, it was not substantially more probative than prejudicial. "We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case." State v. Fiske, 170 N.H. 279, 286 (2017) (quotation omitted). The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

The witness in question was in a vehicle traveling southbound on Route 16 shortly before the accident. Around 4:00 p.m., he observed a silver pickup truck heading north on the same road and a dust cloud rising from the shoulder of the road as the truck hit a patch of dirt on the side of the road. The witness testified that, as the driver swerved back into his lane, the truck nearly crossed the double lines into the southbound lane. About five or six minutes later, the witness received an alarm activation notice on his electronic device, to which he responded by relaying his observations of the truck.

The defendant argues that the trial court erred in admitting this testimony because the witness did not know the make or model of the truck he observed, could not identify the driver, and was unable to determine the exact time that he observed the truck's erratic operation. All evidence must be relevant to be admissible. N.H. R. Ev. 402. Relevant evidence is that which has any tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. N.H. R. Ev. 401. Evidence does not need to be conclusively connected to the crime before it can be admitted. State v. Perri, 165 N.H. 400, 412 (2012). We conclude that the defendant's challenges to the witness's testimony pertain to

3

its weight rather than its admissibility.  See State v. Littlefield, 152 N.H. 331, 339 (2005).  We are not persuaded by the defendant's arguments that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  See State v. Dion, 164 N.H. 544, 551-52 (2013).  Accordingly, we conclude that the defendant has failed to demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  See Fiske, 170 N.H. at 286.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**